# D. C. Pratt, Plff. in Err., v. John Paules et al.

In an action by seller of slate, against buyer, to recover the price, in which the buyer claimed an allowance for difference in value between the slate delivered and that promised, where the trial judge instructed the jury that, if the slate delivered did not conform to the contract, they should make a proper deduction from the price,—*Held*, that the evidence warranted the instruction.

(Decided March 8, 1886.)

Error to the Common Pleas of Lehigh County to review a judgment for plaintiffs in foreign attachment proceedings to recover money due upon a contract.  Affirmed.

The facts and questions of law raised by this case sufficiently appear in the charge given in the court below, by ALBRIGHT, P. J., the material portions of which are as follows:

Cited in Joseph v. Richardson, 2 Pa. Super. Ct. 209, 216, 38 W. N. C. 489, 27 Pittsb. L. J. N. S. 138; Groetzinger v. Kann, 165 Pa. 578, 36 W. N. C. 10, 25 Pittsb. L. J. N. S. 449, 44 Am. St. Rep. 676, 30 Atl. 1043.

NOTE.—The principle enunciated in PRATT v. PAULES is followed, and the analogous cases fully considered, in Joseph v. Richardson, 2 Pa. Super. Ct. 209, 38 W. N. C. 487, 27 Pittsb. L. J. N. S. 138.

It appears that in the year 1877, Paules & Co., the plaintiffs, were engaged in the quarrying, manufacturing, and selling of slate near Slatington, in this county, and that Mr. Pratt was a dealer in slate in the city of New York. From the letters and telegrams passing between the parties, and from what was said by them on the witness stand in this trial, by way of admission, it appears that in the latter part of September, 1877, the plaintiffs and defendant agreed that the plaintiffs, Paules & Company, should deliver a certain quantity of slate to Mr. Pratt on the cars somewhere in the neighborhood of Slatington, where their quarry was, at the price of $3.25 per square, and that it was agreed that the slate should be strictly No. 1, free from scabs and greybacks. It also appears that on September 29, and October 1 and 2, 1877, the plaintiffs did ship to Mr. Pratt 11 carloads of slate, aggregating 468 squares and a fraction of a square; and that this slate reached Mr. Pratt at New York is admitted by him. This slate at the contract price amounts to $1,521.35.

The plaintiffs admit that they have received $1,033.08, leaving a balance of $488.27, which the plaintiffs claim with interest from January 2, 1878.

The defendant alleges that the plaintiffs are not entitled to this sum, because the slate shipped was not according to contract, and that the defendant, by reason of the inferior quality of the slate and by reason of its not being according to the contract, had damages. Those damages the defendant says amount to more than the plaintiffs' claim, or at least, as the defendant says, to a considerable sum, which the defendant seeks to have deducted from the plaintiffs' claim. It is plain that the plaintiffs are entitled to recover $488.27 with interest, unless the defendant has made out the defense which he has set up to defeat this claim.

It appears from the defendant's testimony that this slate reached the port of Perth Amboy, near New York, where it was taken by barges to New York, preparatory to being loaded upon a ship to convey them to Australia for the market. It would seem that it was intended for that market, which was known to the parties contracting. The defendant contends that the slate, when it reached New York, was not according to contract, because there were scabs and greybacks in it, and also that there was a considerable amount of breakage; more, the defendant

says, than is allowed by the custom of trade, which the plaintiffs also say is about 2 per cent.

The defendant alleges that he had sold this slate to another New York dealer, who was about shipping it to Australia, to other dealers or customers, or for the market generally; that after the long time which had elapsed, when the slate had reached Australia, and returns had come back to New York, it was found there was a great loss by reason of breakage and inferior quality of slate, and that he, Mr. Pratt, had to make good that loss to the parties to whom he sold; and he says that such loss was $490; and that sum he asks to have set off against the plaintiffs' claim.

He further tells you that he sent for a man by the name of Shipherd, who, it seems, was interested in this quarry, in some form, as the landlord of Paules & Company, to come to the vessel where the slate was being loaded, to see about the complaints which Pratt's customer was making in regard to the slate; and then it is alleged that it was agreed between them in a certain way concerning deductions; or that Mr. Pratt should be made whole for breakages and for losses which should be suffered by his customers in Australia.

Mr. Pratt says that he and Mr. Shipherd agreed to allow them the excess of breakage over 4 per cent to Australia, and allow them any loss they might sustain from the inferiority of quality as compared with American slate, particularly with a lot of Chapman slate they had purchased from the quarry, going over on the same vessel.

I say to you that the defendant is not entitled to have, under the evidence, the $490 deducted; and I say further to you that there is no evidence here as to what the breakage was when the slate reached Australia; and there is no evidence here from which the jury can find what the loss was on the sales in Australia because of inferiority of quality.   If Mr. Pratt had shown the losses said to have been sustained by the sales in Australia, then it would be otherwise; but it is his misfortune that he has not the evidence here to prove that.   All that we have is mere hearsay.

Mr. Pratt's customer, to whom he sold this slate, and who consigned it to Australia, according to Pratt's testimony, simply told him (Pratt) that he had these losses on his sales in Australia.   That, however, is not proved.   Mr. Pratt does not know

that those losses occurred in Australia; nor did Mr. Pratt's customer know, because he was not there. It would be acting upon mere hearsay to say that the loss was $490, or that there is any evidence of loss on the slate as it reached Australia and found its market there.

I therefore say to you that it is not proved, in so far as any contract with Shipherd is concerned,—even if it could be found that Paules & Company afterwards ratified what Shipherd had promised,—that the loss ensued according to contract, which the defendant had with Shipherd. The case is accordingly simplified and comes down to this: Is it proved that the slate delivered to the defendant was not according to contract?

[The contract was that the slate was to be strictly No. 1, and free from scabs and greybacks, and the contract also was that it was to be delivered on the cars at or near Slatington; and the condition at the places of delivery is what is to govern. If delivered on the cars according to contract by Paules & Company, then they performed their part of the contract, and are entitled to the whole contract price. If not of that quality, and the defendant has shown what his damages are, according to the rule I will state presently, you will allow the defendant whatever his damages amount to, and render a verdict accordingly.

It has been argued on plaintiff's part that the condition of the slate when it reached the cars at Slatington is to govern, and not the condition in New York after having been handled once or twice. That is true. There is no evidence what the breakage was when delivered on the cars at Slatington. What slate broke after they left Slatington, Paules & Company would not be responsible for.]

It is alleged by the defendant that there were scabs and greybacks in it, and that it did not come up to the quality of No. 1 slate as contracted for. It is for you to say how that is. It would seem to me that if the slate was of inferior quality, whether as to size or thickness, or as to being scabs and greybacks when it reached New York, it must have been the same when loaded; it is not likely it became scabs and greybacks in the process of transportation from Slatington to New York.

Mr. Pratt was to have been furnished with slate of the quality No. 1, free from scabs and greybacks. Unless the defendant has shown that this slate was of an inferior quality, had scabs and greybacks, he has failed in his defense, and the plaintiffs

can recover all that they claim in this case.    If he has satisfied you that the slate was not No. 1, and had these defects and has also satisfied you what the damages were by reason of that, you will allow him a deduction for the amount you find those damages to be.

Mr. Pratt has said that when he examined this slate at New York it was not of the quality and kind ordered, and he has told you what opportunity he had for seeing the slate there while in process of being handled.    You will consider from what he said how much he knew about them.    He has told you that the slate he received was not better than No. 2 quality, and that there were plenty of scabs and greybacks.    In the letters which passed between the parties some reference is made to the quality of the slate, in regard to its being No. 1 and free from scabs and greybacks.    There is nothing in those letters which requires construing by the court.    If you find anything in the letters which throws any light upon the subject, as to whether Paules & Company admitted that the slate was not according to the contract, you can consider that evidence.

If the defendant has satisfied you that it was not according to contract, and has satisfied you as to what his damage was in that respect, you will allow him the benefit of that damage.

Mr. Pratt was entitled, under the contract, to have No. 1 slate, free from scabs and greybacks; and, if he has shown to you that it was not of that quality, you will inquire how much less it was worth than it would have been if according to contract; and the difference will be his damage.

You will ask yourselves, if you reach that question, how much it was worth if not according to the contract; what it was worth in the condition you find it to have been.

The defendant says that he has proved that the slate was no better than No. 2.    Is it proved?    If it is, you will inquire what No. 2 was worth.    If, however, you should find that it is proved that it was no better than No. 2, and not according to contract, and the defendant has shown how much in dollars and cents his damage amounted to, you will allow him the benefit of that damage.

If the defendant has failed in making out his defense, the plaintiffs are entitled to a verdict for the whole amount claimed.

The jury returned a verdict for plaintiffs, and defendant

took this writ, assigning for error the action of the court as indicated in the above brackets.

*R. E. Wright's Sons* for plaintiff in error.

*Edward Harvey* for defendants in error.

PER CURIAM:

It is averred in the paper book of the defendants in error, and not denied by plaintiff, that he has not printed all the evidence. Some which he omitted has been supplied by the other party. We are unable to find any sufficient evidence of the actual condition of the slate when it arrived in Australia. It was delivered on the cars at Slatington. The question was fairly submitted to the jury to find whether the slate delivered to plaintiff in error was according to contract. He was entitled to receive slate of quality No. 1, "free from scabs and greybacks." If such was not furnished, the jury was instructed to allow him a deduction for the amount of his damages by reason thereof. Looking at the whole evidence presented, we think no one of the assignments is sustained.

Judgment affirmed.